IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **KRISTOFFER ERICKSON**,<br><br>                   Plaintiff,<br>v.<br><br>**SUN LIFE AND HEALTH INSURANCE COMPANY**, **SUN LIFE INSURANCE OF CANADA**, and **DOES 1–5**,<br><br>                   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-CV-00258-JNP-JCB<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Defendant Sun Life Insurance of Canada ("Sun Life") denied a claim for short-term disability benefits made by Plaintiff Kristoffer Erickson ("Mr. Erickson") under an ERISA-governed insurance plan (the "Plan"). Mr. Erickson seeks to recover Plan benefits through a claim brought under ERISA, *29 U.S.C. § 1132(a)(1)(B)* (the "ERISA Claim"). Before the court is Sun Life's motion for summary judgment on Mr. Erickson's ERISA Claim. For the reasons stated herein, Sun Life's motion is GRANTED.

**BACKGROUND**

Mr. Erickson worked as a traffic signal repairman and streetlight maintenance worker. ECF No. 4, ¶ 12. As part of Mr. Erickson's employment or union affiliation, he participated in the Plan, which offers participants short-term disability insurance benefits and is funded in full or in part by a Group Policy. *Id.*, ¶ 4. Mr. Erickson's employer terminated his employment on May 11, 2020. Sun Life contends that Mr. Erickson was terminated for poor job performance, to which Mr. Erickson agrees with the caveat that he believes his poor performance was caused by a disabling illness. ECF No. 28, at 7.

In March 2020, Mr. Erickson began experiencing symptoms that he believed were potentially caused by COVID-19. *Id.*, ¶ 15. Mr. Erickson sought treatment from Dr. William Cimikoski, who noted Mr. Erickson had "mild symptoms" and advised him to stay home until those symptoms cleared. ECF No. 24-1, at 221. On April 2, 2020, Dr. Cimikoski shared this opinion in a letter in which he also wrote that Mr. Erickson was "cleared to return to work without restrictions on 4/7/20." *Id.* Later, Dr. Cimikoski wrote a second letter, noting that Mr. Erickson had symptoms of an upper respiratory infection between May 1 and May 8 of 2020 (although Mr. Erickson's COVID-19 antibody test returned a negative result). *Id.*, at 222.

Six months after his termination, Mr. Erickson submitted a claim for short-term disability insurance benefits on November 17, 2020. ECF No. 24-1, at 111. The same day, Sun Life's Case Specialist, Casey Welch, requested additional information regarding Mr. Erickson's claim, including records from Dr. Cimikoski and Mr. Erickson's other treating physicians. *Id.* Mr. Erickson provided and Sun Life reviewed records from Dr. Cimikoski, chart notes from Dr. Weller, and various records related to IV vitamin therapy, treatment provided by Utah Stem Cells, and a controlled substance prescription report. *Id.* at 190. After reviewing this information, Sun Life denied Mr. Erickson's claim. *Id.* Sun Life explained that it was denying benefits because Mr. Erickson was not receiving ongoing treatment, his treating physicians' notes did not mention any functional limitations that would prevent Mr. Erickson from working, Mr. Erickson in fact continued to work between his March 2020 illness and his May 2020 termination, and his medical records made no mention of serious COVID-19 symptoms (i.e., shortness of breath or palpitations). *Id.* Sun Life also informed Mr. Erickson of his right to appeal the denial of benefits within 180 days and laid out the steps he would need to take in order to do so. *Id.* at 191–92.

After receiving Sun Life's denial letter, Mr. Erickson retained counsel. *Id.* at 193. On

2

March 11, 2021, Mr. Erickson submitted an appeal of Sun Life's denial of benefits. *Id.* at 213–54. In his appeal letter, Mr. Erickson asserted that he had been suffering from COVID-19 since April 2020 and that he experienced serious symptoms such as "cough, body aches, fatigue, insomnia, headaches and brain fog." *Id.* at 214. Mr. Erickson's appeal letter also asserted that his symptoms improved after receiving IV nutritional treatments and IV stem cells, but that he was still unable to work a year after his illness began. *Id.* at 214–15. Mr. Erickson's appeal letter also included Dr. Cimikoski's earlier notes stating that Mr. Erickson had a viral illness in early May 2020, which antibody testing revealed to not be COVID-19. *Id.* at 221.

As part of Sun Life's review of Mr. Erickson's appeal, Karen Buckley performed a vocational analysis of Mr. Erickson's job as a traffic signal repairman or streetlight maintenance worker, finding this job's physical demands to be consistent with a "Heavy Physical Demand Level." *Id.* at 265–66. An independent third-party medical expert, Dr. Tajuddin Jiva, also conducted a peer review of Mr. Erickson's medical records, concluding with a report on April 16, 2021. *Id.* at 277–80. Dr. Jiva neither contacted Mr. Erickson nor conducted any independent evaluation of his condition. Based on Mr. Erickson's medical records (and in particular based on Dr. Cimikoski's treatment notes), however, Dr. Jiva concluded that Mr. Erickson had an upper respiratory airway infection resulting in "cough, body aches, fatigue, insomnia, headaches and brain fog" for which he received IV nutritional treatment and IV stem cells on three occasions, experiencing improvement in his symptoms thereafter. *Id.* at 278. Dr. Jiva further concluded that Mr. Erickson's medical records did not demonstrate "functional impairments, physical limitations and/or restrictions" that would "support [his] inability to work." *Id.* In addition to reviewing and crediting Dr. Cimikoski's treatment notes, Dr. Jiva attempted to speak with Dr. Cimikoski as part of his peer review but was unable to obtain any additional information. *Id.*

3

Sun Life provided Dr. Jiva's report to Dr. Cimikoski. In response, Dr. Cimikoski wrote two new letters dated April 20 and May 21, 2021. Dr. Cimikoski's second letter asserted that Mr. Erickson had been under Dr. Cimikoski's "care for residual symptoms related to his COVID infection, which started on 4/4/20." *Id.* at 304. Dr. Cimikoski provided no explanation why his May 2021 letter contradicted his previous statement that Mr. Erickson underwent antibody testing, which "revealed that his infection was not from the Corona Virus[.]" *Id.* at 222. Dr. Cimikoski's May 2021 letter also stated that Mr. Erickson's symptoms had been ongoing since April 4, 2020 and were not foreseeably likely to resolve in a manner that would permit Mr. Erickson to return to work in May 2021. *Id.* at 304. Dr. Cimikoski did not address his prior letters, which cleared Mr. Erickson to return to work in both April and May of 2020 following Mr. Erickson's illness in both of those months. *Id.* at 222.

After receiving Dr. Cimikoski's additional letters, Sun Life obtained a second independent peer review from Dr. Nizar M. Suleman. *Id.* at 315–19. Like Dr. Jiva, Dr. Suleman read and credited Dr. Cimikoski's letters, but found insufficient evidence in Mr. Erickson's treatment records to conclude that Mr. Erickson's illness had caused functional impairments or restrictions that would prevent him from returning to work. *Id.* at 318. Dr. Suleman also conducted his review based on Dr. Cimikoski's office visit notes that Mr. Erickson had provided. Dr. Suleman did not have any direct contact with Mr. Erickson or Dr. Cimikoski and performed no independent testing or evaluation of Mr. Erickson's condition.

Following Dr. Suleman's evaluation, Sun Life informed Mr. Erickson that before a final appeal determination was made, Sun Life would offer him 15 days in which to submit further information for consideration. *Id.* at 340. Mr. Erickson's prior counsel resubmitted the materials that Dr. Suleman had reviewed but provided no additional materials for Sun Life to consider. *Id.*

4

at 351–54. On July 7, 2021, Sun Life then issued a final appeal determination, concluding that the denial of benefits was correct. *Id.* at 355–60. Sun Life found the medical records submitted by Mr. Erickson and reviewed by Dr. Jiva and Dr. Suleman had not demonstrated that Mr. Erickson had medical restrictions that would prevent him from performing his usual work as a traffic signal repairman or streetlight maintenance worker. *Id.*

On July 7, Mr. Erickson's father contacted Sun Life, representing that Mr. Erickson was unaware that he was represented by his prior counsel. Mr. Erickson's father also sent additional medical records to Sun Life on July 9, 2021. Sun Life sent the information to Dr. Suleman to review and provide an addendum opinion in light of the new information. *Id.* at 384. Dr. Suleman issued an addendum opinion on July 19, 2021, taking into consideration all of the documentation and information that Mr. Erickson and his family had provided. *Id.* at 386–89. Dr. Suleman again concluded that none of Mr. Erickson's medical records documented functional impairment and that the sole restriction on his ability to work were two statements from treating medical professionals instructing him to engage in "activity as tolerated." *Id.* at 387. On July 19, 2021, Sun Life affirmed its prior final appeal determination after taking into consideration Dr. Suleman's evaluation of the additional information provided by Mr. Erickson or his family. *Id.* at 401–03. Sun Life informed Mr. Erickson of his right to pursue claims under ERISA and stated that any claims must be brought within three years, or not later than July 19, 2024. *Id.* at 402.

Mr. Erickson filed suit to recover benefits under ERISA on April 13, 2022. ECF No. 4. Now, Sun Life seeks summary judgment on Mr. Erickson's ERISA Claim, arguing that its decision to deny benefits was reasonable and not an abuse of discretion. ECF No. 24.

**SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, when both parties move for summary judgment in an ERISA proceeding focusing on a benefit denial claim, the parties have effectively "stipulated that no trial is necessary" and thus "summary judgment is merely a vehicle for deciding the case."[1] *LaASMAR v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted). In these instances, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (citation omitted).

**ANALYSIS**

Sun Life's motion requests summary judgment on Mr. Erickson's ERISA Claim on the basis that Mr. Erickson cannot show that Sun Life's decision to deny benefits was arbitrary or capricious or an abuse of discretion. ECF No. 24, at 17–18. Mr. Erickson stipulates that the question before the court is whether Sun Life's claim denial was an abuse of discretion (and thus does not seek *de novo* review of Sun Life's decision). ECF No. 28, at 24. Mr. Erickson asserts that Sun Life's motion should be denied because its review of his benefits claim was insufficient as a matter of law. For the reasons stated herein, Sun Life's motion is granted.

### I. STANDARD OF REVIEW

When an ERISA-governed plan gives the administrator discretionary authority to determine benefits eligibility, reviewing courts apply "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance*

---

[1] The parties previously agreed, however, that "[t]his is an ERISA matter, so there are no witnesses or exhibits. There is no jury trial. The matter will be decided on the administrative record through cross motions for summary judgment." ECF No. 21. Only Sun Life has filed a summary judgment motion. ECF No. 24. Nonetheless, Mr. Erickson's brief repeatedly requests an order finding that "Sun Life's denial of his claim" was "arbitrary, capricious, unreasonable and an abuse of discretion." *See, e.g.,* ECF No. 28, at 36. The court also notes that Mr. Erickson's opposition to the motion relies upon arguments contesting the sufficiency of Sun Life's consideration of his benefits claim as a matter of law, such that factual inferences are immaterial to the resolution of Sun Life's motion.

*Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations omitted). Here, the parties agree that the Plan gives Sun Life discretion to determine benefits coverage. As a result, arbitrary and capricious review is the appropriate standard of review.

Claim denials are upheld on arbitrary and capricious review if "reasonable and supported by substantial evidence." *D.K. v. United Behavioral Health*, 67 F.4th 1224, 1235 (10th Cir. 2023) (citing *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)); *see also David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293 (10th Cir. 2023) (quoting *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1357-58 (10th Cir. 2009)) ("We define substantial evidence as 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance.'"). A coverage decision lacks substantial evidence if it rejects and fails to explain why it disagrees with opinions from a plaintiff's medical providers, *D.K.*, 67 F.4th at 21, if it fails to sufficiently explain its conclusions with supportive reasoning and citations to the record, *id.* at 29-30, or if it "is not grounded [on] any reasonable basis[,]" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (citations and internal quotation marks omitted), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). A coverage decision's reasonableness is further judged on whether it resulted from a "reasoned and principled process." *D.K.*, 67 F.4th at 18 (quoting *Flinders*, 491 F.3d at 1193).

## II. SUN LIFE'S BENEFITS DETERMINATION WAS NOT AN ABUSE OF DISCRETION AS A MATTER OF LAW

Sun Life asserts that its decision to deny benefits was reasonable and not an abuse of discretion. ECF No. 24. In opposing Sun Life's motion for summary judgment, Mr. Erickson neither argues that Sun Life failed to consider relevant information in its claim determination nor

7

that some factual dispute precludes the entry of summary judgment. Instead, Mr. Erickson's opposition relies upon several legal arguments regarding the process that an ERISA Plan administrator must follow when denying benefits claims and the definitions of certain terms under the Plan at issue here. In particular, Mr. Erickson argues that Sun Life (A) misinterpreted the Plan's definition of "disabled"; (B) applied a legally insufficient methodology to evaluate Mr. Erickson's benefits claim; and (C) denied benefits when Mr. Erickson had produced sufficient evidence to support his benefits claim. The court will address each of these arguments in turn.

### A. SUN LIFE DID NOT ABUSE ITS DISCRETION WHEN DEFINING "DISABLED"

First, Mr. Erickson argues that Sun Life's denial of benefits was arbitrary and capricious or an abuse of discretion because Sun Life allegedly misinterpreted the Plan's definition of "disabled." Mr. Erickson "asserts the test is whether [he had] a sickness(es) which ha[s] caused, . . . [him not] to be able to perform one or more of the material and substantial duties of his job/occupation." ECF No. 28, at 26. Sun Life, Mr. Erickson argues, evaluated Mr. Erickson's short-term disability insurance claim in a manner that required Mr. Erickson to show that he could not perform "the duties of his regular occupation." *Id.*

Nothing in the Plan states that Mr. Erickson would be eligible for benefits whenever an illness prevents him from performing "one or more" of his job's material and substantial duties. Instead, the Plan states that "[t]otal Disability . . . means you are unable to perform the Material and Substantial Duties of your Regular Occupation." *Id.* at 11. For Mr. Erickson to be eligible for benefits, the Plan requires him to have been *totally* disabled for 14 days—the duration of the "Elimination Period." *Id.* at 7, 356. Mr. Erickson's argument to the contrary is therefore immaterial to the present dispute and cannot provide a basis to deny Sun Life's motion for summary judgment. The Plan required Sun Life to determine whether Mr. Erickson was totally disabled. Sun Life did

8

so and concluded that he was not.

Second, Mr. Erickson argues that "Sun Life is interpreting the definition of disability as requiring a sickness to be manifested primarily by objective medical evidence" and is "also requiring the restrictions and limitations which such sickness causes, to be tested, documented, and measured by objective medical evidence, regardless of the practicalities or costs involved on the part of the claimant[.]" ECF No. 28, at 25–26. These arguments are similarly unpersuasive.

As Sun Life notes, its reviewers did not state that they were denying Mr. Erickson's benefits claim because he failed to provide *objective* evidence—they simply found that Mr. Erickson had not shown (with objective evidence or otherwise) that he suffered from functional impairments caused by his illness that would prevent him from working. *See, e.g.,* ECF No. 24-1, at 191 (internal clinical consultant concluded that Mr. Erickson's medical records "do not support restrictions and limitations from working"), 278 (Dr. Jiva concluded that Mr. Erickson's medical records did not demonstrate "functional impairments, physical limitations and/or restrictions" that would "support the claimant's inability to work"), and 387 (Dr. Suleman concluded that none of Mr. Erickson's medical records documented functional impairment and that the sole restriction on his ability to work were two statements from treating medical professionals instructing him to engage in "activity as tolerated"). Mr. Erickson does not point to any correspondence in which Sun Life required him to prove up his benefits claim with objective evidence alone. In fact, the Plan requires the insured to show "Proof" supportive of a claim, meaning "*any* medical, financial, or other information that we require to make a . . . determination"—not only "objective" evidence. *Id.* at 10. Moreover, as Sun Life notes, the Tenth Circuit has indicated (albeit in an unpublished decision) that requiring objective evidence would not render a decision denying benefits unreasonable. ECF No. 29, at 7 (citing *Loughray v. Hartford Grp. Life Ins. Co.*, 366 F. App'x 913,

9

924 (10th Cir. 2010) (unpublished)). Mr. Erickson's contention that requiring the insured to prove his disability "regardless of the practicalities or costs involved on the part of the claimant" demonstrates an abuse of discretion is similarly undermined by case law. *See, e.g., Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1193 (10th Cir. 2023) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (stating that employers "have large leeway to design . . . plans as they see fit")); *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380–81 (10th Cir. 2005) (discussing ERISA's design as requiring a plaintiff to submit his evidence to prove his disability while confining the claim administrator's benefits determination to the administrative record).

The court concludes that Sun Life did not abuse its discretion by misinterpreting the Plan's definition of "disabled" as Mr. Erickson alleges. The court thus turns to the second set of arguments Mr. Erickson presents, which contest the validity of the evaluative methodology that Sun Life used to evaluate his benefits claim.

### B. SUN LIFE'S EVALUATIVE METHODOLOGY DID NOT CONSTITUTE AN ABUSE OF DISCRETION

Mr. Erickson's second set of arguments contest the validity of the methodology that Sun Life used to deny Mr. Erickson's benefits claim. This line of argument relates to Mr. Erickson's preceding argument. Mr. Erickson first argued that it is an abuse of discretion to require an insured to prove his own disability "regardless of the practicalities or costs involved[.]" ECF No. 28, at 25–26. Now, Mr. Erickson contends that Sun Life not only abused its discretion by requiring him to submit evidence in support of his benefits claim, but that Sun Life defaulted on an obligation to affirmatively investigate and generate a record to *disprove* Mr. Erickson's benefits claim. That position, which presumes that an insurer abuses its discretion by basing its decision on a peer review of the insured's medical records, is mistaken.

10

As the movant, Sun Life is obliged to prove the absence of a genuine dispute as to material facts and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). But as the insured who brought an ERISA claim for the recovery of benefits, Mr. Erickson carries the burden to demonstrate as an element of his claim that he is entitled to insurance benefits such that Sun Life's denial of those benefits was an abuse of discretion. ECF No. 28, at 24 ("Mr. Erickson agrees that he has the burden of proving an abuse of discretion."). With this standard in mind, Mr. Erickson's argument that Sun Life possessed an obligation to affirmatively investigate and disprove Mr. Erickson's benefits claim appears to be an attempt to reverse the applicable burden of proof. Moreover, Sun Life has pointed to significant authority establishing that it does not have an obligation to interview the insured, conduct additional tests or evaluations, or prescribe a course of treatment independent from that set forth in letters from the insured's treatment providers. *See, e.g., Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991)) ("[T]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts *within [his] knowledge* to counter a claim that it was arbitrary or capricious.") (alteration in original) (emphasis added). Mr. Erickson offers no case law supporting his contrary position.[2]

After an ERISA claimant has produced his medical records for the insurer's review, the insurer has denied benefits, and the claimant has appealed that decision, insurers may refer the medical records to an independent physician to conduct a peer review of the decision. Mr. Erickson contends that this methodology for evaluating benefits claims is insufficient, in part because Mr.

---

[2] This fact is indicative of broader concerns that the court has with Mr. Erickson's opposition memorandum (ECF No. 28). Plaintiff filed no motion for leave to file an overlength memorandum, yet his opposition is more than 10 pages over the length permitted by this court's local rules. *See* DUCivR 7-1(a)(4)(C)(i). Despite the extra pages, Plaintiff's opposition memorandum included no legal citations whatsoever, notwithstanding the fact that he relies predominately on legal arguments.

11

Erickson's treating providers' notes were not prepared specifically for litigation, such that Sun Life is required to engage in its own testing of Mr. Erickson's condition. This court reviewed and dismissed a nearly identical claim in *Kelly v. Unum Grp.* In that case, the court wrote that "records prepared in the normal course of care—not records prepared with the purpose of supporting a patient's [long-term disability] application—likely represent the most credible source of information about an insured's health." 592 F. Supp. 3d 1002, 1008–09 (D. Utah 2022) (citing *Black & Decker Disability Plan*, 538 U.S. at 832). "Finally," the court continued, "ERISA does not require an insurer to conduct testing or functional capacity evaluations on an insured." *Id.* at 1009 (citing *Flanagan v. Metro. Life Ins.*, 251 F. App'x. 484, 487-89 (10th Cir. 2007) (unpublished)). Reviewing the relevant cases again today, the court finds no reason to reach a different conclusion. Mr. Erickson's arguments to the contrary, which rely upon no authority, are unpersuasive in light of these considerations. The court therefore determines that the methodology that Sun Life followed in denying Mr. Erickson's benefits claim was not an abuse of discretion.

### C. SUN LIFE DID NOT MISEVALUATE MR. ERICKSON'S MEDICAL RECORDS IN A MANNER CONSTITUTING AN ABUSE OF DISCRETION

Mr. Erickson's final argument is that "even if the Plan gives Sun Life the discretion to determine that the only way a claimant can establish disability, is if the <u>claimant submits</u> objective medical records which documents the presence of a sickness which generates limitations which preclude performance of the material and substantial duties of his job/regular occupation, he alleges the information he submitted meets that test." ECF No. 28, at 30 (emphasis in original). Mr. Erickson supports this factual argument with two other legal arguments rather than with evidence from the administrative record. Mr. Erickson argues that he personally knew more than anyone about his illness, and yet Sun Life failed to "affirmatively investigate [his] sickness(es) or

12

medical conditions[.]" ECF No. 28, at 30. Similarly, he contests that Sun Life's review of his treating providers' records to determine his disability status constitutes an abuse of discretion because those records were not specifically created in anticipation of litigation or to support a claim for disability benefits. The court has already rejected both of these arguments. *See* Section II(B), *supra*. Mr. Erickson's allegation that he submitted sufficient information to show his entitlement to benefits is therefore unpersuasive, and his failure to support his factual argument with references to the administrative record prevents the court from finding a genuine dispute as to the material fact of whether Sun Life's benefits determination was supported by substantial evidence.

**ORDER**

For the reasons stated herein, Sun Life's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

Signed March 27, 2024

BY THE COURT

Jill N. Parrish
United States District Court Judge